ORAL ARGUMENT NOT YET SCHEDULED

No. 14-1249

IN THE

# United States Court of Appeals
# for the District of Columbia Circuit

———————————

SIERRA CLUB,

Petitioner,

v.

FEDERAL ENERGY REGULATORY COMMISSION,

Respondent.

———————————

Petition for Review of Orders
of the Federal Energy Regulatory Commission

———————————

**OPPOSITION OF INTERVENORS SABINE PASS
LIQUEFACTION, LLC AND SABINE PASS LNG, L.P. TO
JOINT MOTION TO HOLD PETITION IN ABEYANCE**

———————————

LISA M. TONERY
CHARLES R. SCOTT
NORTON ROSE FULBRIGHT US LLP
666 Fifth Avenue
New York, N.Y. 10103
(212) 318-3278


February 12, 2015

JONATHAN S. FRANKLIN
NORTON ROSE FULBRIGHT US LLP
801 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
(202) 662-0466

Counsel for Sabine Pass Liquefaction,
LLC and Sabine Pass LNG, L.P.

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................... ii

BACKGROUND ...................................................................................2

    A.    The Orders Under Review ........................................2

    B.    Sierra Club's Challenges to Other FERC LNG Export Orders ..........................................................4

    C.    The Joint Motion to Hold This Proceeding in Abeyance .................................................................6

DISCUSSION .......................................................................................7

    I.    HOLDING PROCEEDINGS IN ABEYANCE IS PERMISSIBLE ONLY IN RARE CIRCUMSTANCES WHERE THE MOVANT DEMONSTRATES A CLEAR CASE OF HARDSHIP OR INEQUITY ...............................7

    II.    THE JOINT MOTION FAILS TO ESTABLISH A PRESSING NEED FOR A STAY OF PROCEEDINGS ...................9

    III.    HOLDING THIS PROCEEDING IN ABEYANCE COULD HARM SABINE PASS' INTERESTS ...............................12

CONCLUSION ...................................................................................16

# TABLE OF AUTHORITIES

**Page(s)**

**CASES:**

*Am. Life Ins. Co. v. Stewart*, 300 U.S. 203 (1937) ................................7

*Basardh v. Gates*, 545 F.3d 1068 (D.C. Cir. 2008) ......................................7, 13

*Belize Soc. Dev. Ltd. v. Gov't of Belize*, 668 F.3d 724 (D.C. Cir. 2012) ......................................................................................8, 12

*Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976) ......................................................................................11

*Del. Riverkeeper Network v. FERC*, 753 F.3d 1304 (D.C. Cir. 2014) ......................................................................................11

*Dellinger v. Mitchell*, 442 F.2d 782 (D.C. Cir. 1971) ..................................8, 10

*FirstEnergy Serv. Co. v. FERC*, 758 F.3d 346 (D.C. Cir. 2014) ......................11

*Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936) ..........................................*passim*

*McSurely v. McClellan*, 426 F.2d 664 (D.C. Cir. 1970) ......................................8

*Midland Power Co-op. v. FERC*, 774 F.3d 1 (D.C. Cir. 2014) ........................11

*Minisink Residents for Envtl. Pres. & Safety v. FERC*, 762 F.3d 97 (D.C. Cir. 2014) ......................................................................................11

*New England Power Generators Ass'n, Inc. v. FERC*, 757 F.3d 283 (D.C. Cir. 2014) ......................................................................................11

*NO Gas Pipeline v. FERC*, 756 F.3d 764 (D.C. Cir. 2014) ..............................11

*Pub. Serv. Comm'n v. FERC*, 772 F.3d 1297 (D.C. Cir. 2014) ........................11

*S.C. Pub. Serv. Auth. v. FERC*, 762 F.3d 41 (D.C. Cir. 2014) ..........................11

*Sw. Power Admin. v. FERC*, 763 F.3d 27 (D.C. Cir. 2014) ..............................11

*W. Deptford Energy, LLC v. FERC*, 766 F.3d 10 (D.C. Cir. 2014) ..................11

*Winter v. Nat. Res. Def. Council*, 555 U.S. 7 (2008) .........................................13

**STATUTES:**

15 U.S.C. § 717b (2012) ...................................................................................2

15 U.S.C. § 717r (2012) ...................................................................................4

**FEDERAL ENERGY REGULATORY COMMISSION ORDERS:**

*Sabine Pass Liquefaction, LLC & Sabine Pass LNG, L.P.*, 139
  FERC ¶ 61,039 (2012) ...............................................................................2, 3

*Sabine Pass Liquefaction, LLC & Sabine Pass LNG, L.P.*, 140
  FERC ¶ 61,076 (2012) ...................................................................................2

*Sabine Pass Liquefaction, LLC & Sabine Pass LNG, L.P.*, 144
  FERC ¶ 61,099 (2013) ...................................................................................2

*Sabine Pass Liquefaction, LLC & Sabine Pass LNG, L.P.*, 146
  FERC ¶ 61,117 (2014) ...................................................................................4

*Sabine Pass Liquefaction, LLC & Sabine Pass LNG, L.P.*, 148
  FERC ¶ 61,200 (2014) ...................................................................................4

**OTHER AUTHORITY:**

Press Release, *Cheniere Energy Partners, L.P., Cheniere and BG
  Sign 20-Year LNG Sale and Purchase Agreement* (Oct. 26,
  2011) .........................................................................................................13

Press Release, *Cheniere Energy Partners, L.P., Cheniere and Gas
  Natural Fenosa Sign 20-Year LNG Sale and Purchase
  Agreement* (Nov. 21, 2011) .......................................................................13

Press Release, *Cheniere Energy Partners, L.P., Cheniere and
  GAIL India Sign 20-Year LNG Sale and Purchase Agreement*
  (Dec. 11, 2011) ....................................................................................13-14

Press Release, *Cheniere Energy Partners, L.P., BG Increases LNG Volumes to 5.5 MTPA under its 20-Year LNG Sale and Purchase Agreement at the Sabine Pass LNG Terminal* (Jan. 26, 2012) ...................................................................................14

Press Release, *Cheniere Energy Partners, L.P., Cheniere and KOGAS Sign 20-Year LNG Sale and Purchase Agreement* (Jan. 30, 2012) ...................................................................................14

Intervenor-Respondents Sabine Pass Liquefaction, LLC and Sabine Pass LNG, L.P. (together, "Sabine Pass") oppose the Joint Motion to Hold Petition in Abeyance ("Joint Motion") filed by Respondent Federal Energy Regulatory Commission ("FERC") and Petitioner Sierra Club.  FERC and Sierra Club have failed to show that there is a pressing need for abeyance pending disposition of case No. 14-1275 (the "*Freeport*" proceeding), and certainly have not made the requisite clear case of hardship or inequity from allowing this case to proceed.

Sierra Club filed this case more than three weeks before it filed its petition for review in *Freeport* and it intends to raise six issues in this proceeding, only one of which it also intends to raise in *Freeport*.  Sabine Pass is the party directly affected by the orders under review.  Although Sabine Pass supports FERC on the merits, it believes the proper course of action would be for briefing to proceed in both cases—on a staggered basis, if necessary to accommodate counsels' schedules—with the Court then determining whether the interests of judicial economy would be served by assigning both cases to the same panel.  That would mitigate the potential harm to Sabine Pass' interests that might otherwise result from indefinite delay of litigation over the authorization granted to Sabine Pass by the FERC orders under review.  Sierra Club did not need to file this case at all, but now that it has done so, it should proceed with its case as the Court's rules provide.

## BACKGROUND

**A.    The Orders Under Review.**

In April 2012, FERC issued an order under Section 3 of the Natural Gas Act ("NGA"), 15 U.S.C. § 717b (2012), authorizing Sabine Pass to site, construct, and operate certain liquefied natural gas ("LNG") export terminal facilities (including four liquefaction "trains") collectively comprising stages 1 and 2 of the "Sabine Pass Liquefaction Project," in Cameron Parish, Louisiana.  *See Sabine Pass Liquefaction, LLC & Sabine Pass LNG, L.P.*, 139 FERC ¶ 61,039 (2012).  Sierra Club unsuccessfully requested rehearing of that order by FERC, *see Sabine Pass Liquefaction, LLC & Sabine Pass LNG, L.P.*, 140 FERC ¶ 61,076 (2012) (denying rehearing and stay), but did not petition for judicial review thereafter.[1]  Stages 1 and 2 are currently under construction, with the four liquefaction trains expected to be substantially complete by February 2016, June 2016, April 2017, and August 2017, respectively.[2]

---

[1]    Similarly, Sierra Club did not request rehearing or judicial review of FERC's August 2, 2013 order authorizing modifications to enable accelerated construction of stages 1 and 2 of the Sabine Pass Liquefaction Project.  *See Sabine Pass Liquefaction, LLC & Sabine Pass LNG, L.P.*, 144 FERC ¶ 61,099 (2013).

[2]    *See* Sabine Pass Liquefaction Project, Monthly Progress Report, December 2014, *Sabine Pass LNG, L.P. & Sabine Pass Liquefaction, LLC*, FERC Docket Nos. CP11-72-000 & CP13-2-000 (Jan. 26, 2015) (http://elibrary.ferc.gov/idmws/common/OpenNat.asp?fileID=13750229).  Authorization for stage 3—including a fifth and sixth liquefaction train and associated interstate natural gas pipeline

The April 2012 FERC order authorized Sabine Pass to site, construct, and operate LNG export terminal facilities that would enable Sabine Pass to liquefy and export up to 16 million metric tonnes per annum of LNG, or the equivalent of approximately 2.2 billion cubic feet ("Bcf") per day of natural gas. *Sabine Pass Liquefaction, LLC & Sabine Pass LNG, L.P.*, 139 FERC ¶ 61,039, at 3 (2012). During the construction process, however, Sabine Pass determined, based on detailed equipment specifications and design and operating assumptions, that the four liquefaction trains' combined peak daily capacity could actually be 2.76 Bcf per day rather than 2.2 Bcf per day.  This increased capacity would not require any further construction or design modifications beyond what FERC had already authorized.  Accordingly, in October 2013 Sabine Pass submitted an application to FERC seeking a limited amendment to its NGA Section 3 authorization that would increase the total authorized peak production capacity of stages 1 and 2 of the Sabine Pass Liquefaction Project to 2.76 Bcf per day.

FERC issued an order granting the requested authorization in February 2014, noting that "an accurate calculation of the maximum or peak capacity at optimal conditions may not be possible at the time an initial application for construction is filed," and that "Sabine Pass's request here does not involve any new construction

infrastructure—is currently pending before FERC in Docket Nos. CP13-552-000 and CP13-553-000.

or modification of existing facilities." *Sabine Pass Liquefaction, LLC & Sabine Pass LNG, L.P.*, 146 FERC ¶ 61,117, at 12, 19 (2014). Sierra Club filed a request for rehearing, which FERC denied in September 2014. *Sabine Pass Liquefaction, LLC & Sabine Pass LNG, L.P.*, 148 FERC ¶ 61,200 (2014). Sierra Club's instant petition for review under Section 19 of the NGA, 15 U.S.C. § 717r (2012), followed, seeking review only of the February 2014 order and the order denying rehearing. In its Statement of Issues to Be Raised, Sierra Club indicated that it intends to make six arguments as to why the orders at issue allegedly contravene the NGA and the National Environmental Policy Act ("NEPA"). *See* Statement of Issues to Be Raised (filed Dec. 22, 2014).

Sabine Pass moved to intervene as a respondent supporting FERC on December 16, 2014. The motion was granted on January 9, 2015.

**B.     Sierra Club's Challenges to Other FERC LNG Export Orders.**

Separate from its efforts against the Sabine Pass Liquefaction Project, Sierra Club has also brought legal and administrative challenges against numerous other LNG export projects pending before or authorized by FERC.[3] In pertinent part, Sierra Club has petitioned this Court in *Freeport* (No. 14-1275) to review two

---

[3]     Item 6g in Sierra Club's Docketing Statement in *Freeport* lists other administrative proceedings (before both FERC and the U.S. Department of Energy) in which Sierra Club asserts that substantially the same issues arise. *See* Docketing Statement, No. 14-1275 (filed Jan. 12, 2015).

FERC orders under NGA Section 3 authorizing Freeport LNG Development, L.P., et al. to site, construct, and operate LNG export terminal facilities in Brazoria County, Texas. Sierra Club has stated that it intends to raise eight issues in *Freeport* relating to the NGA and NEPA, but those include only one of the six specific issues that Sierra Club ostensibly intends to raise in this case (namely, whether LNG export projects' indirect effects on inducement of natural gas production are cognizable under NEPA). *See* Statement of Issues to be Raised, No. 14-1275 (filed Jan. 12, 2015). On the same day that the motion to hold this case in abeyance was filed, Sierra Club also filed a joint motion in the *Freeport* proceeding proposing a briefing schedule whereby Sierra Club's opening brief would be due on March 13, 2015, and its reply brief on June 19, 2015. *See* Joint Proposed Briefing Schedule, No. 14-1275 (filed Jan. 30, 2015).

Similarly, in D.C. Cir. No. 14-1190, Sierra Club has petitioned the Court to review FERC orders authorizing Cameron LNG, LLC and Cameron Interstate Pipeline, LLC to site, construct, and operate LNG export terminal facilities and related pipeline facilities in Louisiana. In that case, Sierra Club identified twelve issues it intends to raise, including indirect effects on inducement of natural gas production. *See* Statement of Issues to Be Raised, No. 14-1190 (filed Oct. 30, 2014). Sierra Club did not seek to hold that case in abeyance and, on February 4, 2015, the Court issued a briefing schedule whereby Sierra Club's opening brief

would be due on March 23, 2015, and its reply brief on July 22, 2015.  *See* Order,

No. 14-1190 (filed Feb. 4, 2015).

### C.    The Joint Motion to Hold This Proceeding in Abeyance.

In their January 30, 2015, Joint Motion to Hold Petition in Abeyance, FERC

and Sierra Club ask that this case be held in abeyance "pending a decision by a

panel" in the *Freeport* proceeding.  Joint Mot. at 5.  The movants acknowledge that

the two cases "arise from separately issued regulatory approval[s] of different LNG

projects owned by unrelated companies," that "[t]he Freeport LNG and Sabine

Pass LNG projects were reviewed by [FERC] in separate administrative

proceedings which entailed [FERC's] individual environmental review of each

project," that "the two cases are predicated on distinct agency records," and that

"Sierra Club raises additional, unrelated issues in each case[.]"  *Id.* at 2.

Nevertheless, "because Sierra Club is raising the 'induced production' of natural

gas issue in both cases," the Joint Motion contends that it "would promote judicial

economy and would serve to avoid potentially inconsistent decisions" to hold the

instant case in abeyance.  *Id.* at 2–3.  The Joint Motion adds that, because the

FERC orders at issue do not entail any new construction, "[t]he rights of [Sabine

Pass] will not be harmed if No. 14-1249 is held in abeyance," especially because

"both cases will likely be resolved before … late 2017[.]"  *Id.* at 4.  By contrast,

because the *Freeport* proceeding does concern FERC orders that entail

- 6 -

construction, "Sierra Club desires for that case to proceed directly to the merits in

as expeditious a manner as possible." *Id.* The Joint Motion also states that, should

disposition of the *Freeport* proceeding be "delayed or take[] longer than

anticipated, there will be time for the parties to seek to return No. 14-1249 to active

status." *Id.*

## DISCUSSION

### I. HOLDING PROCEEDINGS IN ABEYANCE IS PERMISSIBLE ONLY IN RARE CIRCUMSTANCES WHERE THE MOVANT DEMONSTRATES A CLEAR CASE OF HARDSHIP OR INEQUITY.

The Joint Motion nowhere specifies the legal standards for its request. That

is not surprising, since the motion does not satisfy them. "Only in rare

circumstances will a litigant in one cause be compelled to stand aside while a

litigant in another settles the rule of law that will define the rights of both." *Landis

v. N. Am. Co.*, 299 U.S. 248, 255 (1936). In deciding whether to hold cases in

abeyance, courts face "many circumstances to be weighed, as, for instance, the

condition of the court calendar … as well as other factors." *Am. Life Ins. Co. v.

Stewart*, 300 U.S. 203, 216 (1937); *see also Landis*, 299 U.S. at 254–55 (court's

consideration of whether to stay proceedings "calls for the exercise of judgment,

which must weigh competing interests and maintain an even balance"); *Basardh v.

Gates*, 545 F.3d 1068, 1069 (D.C. Cir. 2008) ("We may also take account of the

traditional factors in granting a stay[.]"). Ultimately, however, the party moving to

- 7 -

hold litigation in abeyance "must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to someone else." *Landis*, 299 U.S. at 255.

In the related context of reviewing district court stays of litigation for abuse of discretion, this Court has explained that "[t]he scope of the stay and the reasons for its issuance determine whether a stay is immoderate." *Belize Soc. Dev. Ltd. v. Gov't of Belize*, 668 F.3d 724, 732 (D.C. Cir. 2012). In other words, it has followed *Landis* in holding that "a court abuses its discretion in ordering a stay 'of indefinite duration in the absence of a pressing need.'" *Id.* at 731–32 (quoting *Landis*, 299 U.S. at 255). Moreover, the Court has rejected the argument that *Landis* requires a "pressing need" to be established only "where there is a 'fair possibility that the stay will work damage to someone else.'" *Id.* at 732. And it has found stays pending completion of other litigation "sufficiently indefinite to require a finding of a pressing need under *Landis*." *Id.* Thus, the Court has vacated stays pending completion of other litigation where no pressing need has been shown. *See, e.g.*, *id.* at 731–33 (vacating stay of petition to enforce arbitration award pending foreign litigation of indefinite duration); *Dellinger v. Mitchell*, 442 F.2d 782, 785–88 (D.C. Cir. 1971) (vacating stay of civil action pending final completion of criminal case pending against only some of the plaintiffs); *McSurely v. McClellan*, 426 F.2d 664, 671–72 (D.C. Cir. 1970) (same).

## II.   THE JOINT MOTION FAILS TO ESTABLISH A PRESSING NEED FOR A STAY OF PROCEEDINGS.

The Joint Motion seeks to hold this proceeding in abeyance for an indefinite period of time pending resolution of *Freeport*, but fails to show the requisite pressing need for such action by the Court, and certainly does not make out a clear case of hardship or inequity that would result if the case goes forward.

The Joint Motion's principal argument in favor of abeyance is that one of the six specific issues that Sierra Club intends to raise in this case will also be at issue in *Freeport*, so that abeyance "would promote judicial economy and would serve to avoid potentially inconsistent decisions."  Joint Mot. at 3.  As discussed, however, Sierra Club has represented to the Court that the remaining five issues it intends to raise here are distinct from the eight it intends to raise in *Freeport*.  *See supra* at 6.  And Sierra Club has made no representation that a decision in *Freeport* would necessarily be controlling on this case, even on the issue that it contends is present in both cases.  Indeed, the fact that each proceeding appears to raise so many unique issues is a natural consequence of the fact that—as the Joint Motion acknowledges—"the cases arise from separately issued regulatory approval[s] of different LNG projects [that are] owned by unrelated companies … [and that] were reviewed by the Commission in separate administrative proceedings which entailed the Commission's individual environmental review of each project, … predicated on distinct agency records[.]"  Joint Mot. at 2.

- 9 -

Accordingly, the benefits to judicial economy of holding this case in abeyance appear minimal because the specific issue allegedly common to both cases is only one of many raised by Sierra Club in the two cases, and Sierra Club has not represented that resolution of even that one issue would necessarily be dispositive of the issue in this case. Judicial economy thus provides a slender reed for holding this case in abeyance. *Cf. Dellinger*, 442 F.2d at 787 ("This appeal to 'economy,' even in the absence of interference with another proceeding, would prove too much. It would support a district court stay of proceedings in a case whenever the same question is involved before another court in litigation not involving the parties protesting the stay."). Sabine Pass respectfully submits that any interest of judicial economy could be better served—and the risk of inconsistent decisions avoided—by assigning both proceedings to the same panel if the Court deems that action appropriate once briefing is completed.

The Joint Motion also states that "Sierra Club desires for [*Freeport*] to proceed directly to the merits in as expeditious a manner as possible." Joint Mot. at 4. While it is true that a court's power to hold a case in abeyance "is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants," *Landis*, 299 U.S. at 254, Sierra Club's preference for the later-filed *Freeport* case to proceed to decision first does not, without more, warrant holding this case in

- 10 -

abeyance indefinitely. Even if *Freeport* would be dispositive on one issue in this case—which is not known at this time—Sierra Club has not shown that this is one of the "rare circumstances" where "a litigant in one cause [can] be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both." *Landis*, 299 U.S. at 255.[4]

The Joint Motion proposes to keep this case entirely on ice for an indefinite period until a panel decision issues in *Freeport*. That would not be a short delay. In recent petitions for review of FERC orders in this Court, the time between the filing of the petition and a panel decision after argument has averaged approximately 21 months, with some taking more than two years.[5] Thus, the

---

[4]     Moreover, because this Court's jurisdiction over these cases is non-discretionary, the Court cannot simply defer a decision to accept discretionary review in one case pending a decision in another case (as, for example, the Supreme Court might). *Cf. Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976) (noting "the virtually unflagging obligation of the federal courts to exercise the jurisdiction given them").

[5]     These figures were derived from the dockets in the following cases: *La. Pub. Serv. Comm'n v. FERC*, 772 F.3d 1297 (D.C. Cir. 2014) (No. 13-1155); *Midland Power Co-op. v. FERC*, 774 F.3d 1 (D.C. Cir. 2014) (No. 13-1184); *W. Deptford Energy, LLC v. FERC*, 766 F.3d 10 (D.C. Cir. 2014) (No. 12-1340); *Sw. Power Admin. v. FERC*, 763 F.3d 27 (D.C. Cir. 2014) (No. 13-1033); *S.C. Pub. Serv. Auth. v. FERC*, 762 F.3d 41 (D.C. Cir. 2014) (No. 12-1232); *Minisink Residents for Envtl. Pres. & Safety v. FERC*, 762 F.3d 97 (D.C. Cir. 2014) (No. 12-1481); *FirstEnergy Serv. Co. v. FERC*, 758 F.3d 346 (D.C. Cir. 2014) (No. 12-1461); *New England Power Generators Ass'n, Inc. v. FERC*, 757 F.3d 283 (D.C. Cir. 2014) (No. 12-1060); *NO Gas Pipeline v. FERC*, 756 F.3d 764 (D.C. Cir. 2014) (No. 12-1470); *Del. Riverkeeper Network v. FERC*, 753 F.3d 1304 (D.C. Cir. 2014) (No. 13-1015).

- 11 -

indefinite delay sought by Sierra Club and FERC would likely delay the briefing and disposition of this case by more than a year and a half.  Nor is there any indication that *Freeport* will proceed faster than normal.  In that case, Sierra Club waited nearly a month to seek review; sought an extension of time to propose a briefing schedule; and ultimately proposed a briefing schedule that would give Sierra Club more than three months from the filing of its petition to submit an opening brief, and thirty days from the intervenor's filing of an answering brief to file a reply brief, which would not be due until June 19, 2015.  The Joint Motion provides no compelling reason why this case should proceed any differently.  Indeed, this case was filed first.  To the extent counsel for FERC and Sierra Club are concerned about having to prepare their briefs in the two cases at the same time, such a concern could easily be addressed by staggering the two cases' briefing schedules instead of holding this case in abeyance.

## III.    HOLDING THIS PROCEEDING IN ABEYANCE COULD HARM SABINE PASS' INTERESTS.

The burden is on Sierra Club and FERC to show a pressing need to hold this proceeding in abeyance, regardless of whether such an outcome would be likely to harm Sabine Pass.  *See Belize*, 668 F.3d at 732 (rejecting argument that "a finding of a pressing need under *Landis* …. is required only where there is a 'fair possibility that the stay will work damage to someone else'").  Nevertheless, such an order should only issue after "weigh[ing] competing interests and maintain[ing]

- 12 -

an even balance," *Landis*, 299 U.S. at 255, and this Court "may also take account of the traditional factors," *Basardh*, 545 F.3d at 1069, including "the balance of equities[.]" *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008). It should therefore be noted that the Joint Motion misunderstands the effect that protracted litigation could have on Sabine Pass' interests.

The Joint Motion makes the conclusory assertion that, because construction of stages 1 and 2 of the Sabine Pass Liquefaction Project is not currently expected to be substantially complete until August 2017, "the rights of [Sabine Pass] will not be harmed if No. 14-1249 is held in abeyance," since the case "will likely be resolved before the increase in output at issue … can be utilized[.]" Joint Mot. at 4. In fact, however, it is standard industry practice for LNG export terminal capacity to be commercialized long before construction of the facilities is complete. For example, Sabine Pass' parent company has already entered into twenty-year LNG sale-and-purchase agreements accounting for almost all of the initially-authorized capacity for stages 1 and 2 of the Sabine Pass Liquefaction Project, even though construction is not yet complete.[6] Thus, notwithstanding the

---

[6]    *See* Press Release, *Cheniere Energy Partners, L.P., Cheniere and BG Sign 20-Year LNG Sale and Purchase Agreement* (Oct. 26, 2011) (http://phx.corporate-ir.net/phoenix.zhtml?c=101667&p=irol-newsArticle&ID=1621715); Press Release, *Cheniere Energy Partners, L.P., Cheniere and Gas Natural Fenosa Sign 20-Year LNG Sale and Purchase Agreement* (Nov. 21, 2011) (http://phx.corporate-ir.net/phoenix.zhtml?c=101667&p=irol-newsArticle&ID=1632677); Press Release, *Cheniere Energy Partners, L.P., Cheniere and GAIL India Sign 20-Year*

fact that the increased peak daily LNG production capacity authorized by the

FERC orders under review would require no further construction or modifications,

there is at least a "fair possibility," *Landis*, 299 U.S. at 255, that the specter of this

case being held in abeyance for an indefinite period could have an impact on

Sabine Pass' ability to commercialize the increased capacity.

Nor is it adequate to respond to such concerns by saying—as the Joint

Motion does—that "in the event that resolution of [*Freeport*] is delayed or takes

longer than anticipated, there will be time for the parties to seek to return No. 14-

1249 to active status."  Joint Mot. at 4.  In *Landis*, the Supreme Court rejected just

such an argument by the stay movant, which had contended that the respondents

could file a motion to vacate at a later time:

> We think the answer is inadequate that in the contingencies suggested
> the respondents will be at liberty to move to vacate the stay, and will
> prevail upon that motion if they can satisfy the court that its restraints
> are then oppressive. . . .  The stay is immoderate and hence unlawful
> unless so framed in its inception that its force will be spent within
> reasonable limits, so far at least as they are susceptible of prevision
> and description.  When once those limits have been reached, the

---

*LNG Sale and Purchase Agreement* (Dec. 11, 2011) (http://phx.corporate-
ir.net/phoenix.zhtml?c=101667&p=irol-newsArticle&ID=1638424); Press
Release, *Cheniere Energy Partners, L.P., BG Increases LNG Volumes to 5.5
MTPA under its 20-Year LNG Sale and Purchase Agreement at the Sabine Pass
LNG Terminal* (Jan. 26, 2012) (http://phx.corporate-
ir.net/phoenix.zhtml?c=101667&p=irol-newsArticle&ID=1653097); Press
Release, *Cheniere Energy Partners, L.P., Cheniere and KOGAS Sign 20-Year LNG
Sale and Purchase Agreement* (Jan. 30, 2012) (http://phx.corporate-
ir.net/phoenix.zhtml?c=101667&p=irol-newsArticle&ID=1653973).

fetters should fall off.  To put the thought in other words, an order
which is to continue by its terms for an immoderate stretch of time is
not to be upheld as moderate because conceivably the court that made
it may be persuaded at a later time to undo what it has done.

299 U.S. at 257.

Under this longstanding precedent, parties seeking to have a case held in
abeyance must show that the "rare circumstances" obtain in which there is a
"pressing need" for such action, *Landis*, 299 U.S. at 255, and may not evade that
responsibility merely by minimizing the potential harm that abeyance poses to
other parties and suggesting that those parties can seek to undo the order after the
harm comes to pass.  The potential for harm to Sabine Pass exists now, and the
Joint Motion does not satisfy the heavy burden to justify holding this case in
abeyance.  Having chosen to file this case, Sierra Club should proceed with it in
accordance with the Court's rules.

## CONCLUSION

For the foregoing reasons, FERC and Sierra Club's Joint Motion to Hold

Petition in Abeyance should be denied.

Respectfully submitted,

/s Jonathan S. Franklin
Jonathan S. Franklin
NORTON ROSE FULBRIGHT US LLP
801 Pennsylvania Ave., NW
Washington, D.C. 20004
(202) 662-0466
jonathan.franklin@nortonrosefulbright.com

Lisa M. Tonery
Charles R. Scott
NORTON ROSE FULBRIGHT US LLP
666 Fifth Ave.
New York, N.Y. 10103
(212) 318-3278

Counsel for Sabine Pass Liquefaction, LLC
February 12, 2015          and Sabine Pass LNG, L.P.

- 16 -

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit by using the appellate CM/ECF system on February 12, 2015.  I further certify that all participants in the case are represented by counsel who are registered CM/ECF users, and that service will accordingly be accomplished by the CM/ECF system.

s/ Jonathan S. Franklin
Jonathan S. Franklin

Counsel for Sabine Pass Liquefaction,
LLC and Sabine Pass LNG, L.P.